UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TRISHA GRANT, as Next Friend of HUDSON KNOST; TRISHA GRANT, as Next Friend of GABRIEL KNOST; TRISHA GRANT, as Next Friend of GRACE KNOST; and TRISHA GRANT, individually,<br><br>    Plaintiffs,<br><br>v.<br><br>KIA MOTORS CORPORATION,<br><br>    Defendant, | Case No. 3:14-cv-1584<br>Judge Aleta A. Trauger |

## MEMORANDUM

Defendant Kia Motors Corporation ("KMC") has filed a Motion to Dismiss for Insufficient Service of Process and Improper Venue or, In the Alternative, to Transfer to the United States District Court for the Eastern District of Tennessee, Winchester Division (Docket No. 13), to which the plaintiffs have filed a Response in opposition (Docket No. 17), and KMC has filed a Reply (Docket No. 21). For the reasons stated herein, KMC's motion will be granted and the case will be transferred to the Winchester Division of the United States District Court for the Eastern District of Tennessee.

## BACKGROUND

This case concerns a car crash that took place on February 10, 2014, in Coffee County, Tennessee. Coffee County lies outside the geographic area covered by this court but within the geographic area covered by the United States District Court for the Eastern District of Tennessee (hereinafter, the "Eastern District").

1

According to the Complaint, on February 10, 2014, Hudson Knost, a minor, was driving his mother's Kia-brand automobile on an interstate highway within Coffee County. His minor siblings, Gabriel Knost and Grace Knost, were riding as passengers in the car. All three allegedly were wearing seatbelts. For an unspecified reason, Hudson attempted an "avoidance maneuver" that caused the car to roll over onto the highway's median. During the rollover, Hudson was ejected from the car when the driver's side door opened, Gabriel was ejected from the vehicle, and Grace became trapped in the vehicle until emergency personnel later extracted her from it. All three suffered serious injuries.

The Complaint alleges that KMC, a South Korean corporation, manufactured, engineered, and marketed the Kia-brand car at issue and that the car was defectively designed in multiple respects, thereby causing the Knost siblings' injuries. Trisha Grant, who resides in Coffee County, is the Knost siblings' mother. She has sued Kia both individually and on behalf of her children (Hudson, Gabriel, and Grace) in her capacity as their "next friend," asserting claims for strict products liability, negligence, and breach of warranty. For purposes of simplicity, the court will refer to Grant and her minor children collectively as "the plaintiffs."

Grant is a Coffee County resident. In her briefing, she contends (and KMC does not dispute) that she shares custody of the Knost siblings with her former spouse, who lives in Murfreesboro, Tennessee. She asserts that the Knost siblings primarily reside in Murfreesboro and attend school there.

The plaintiffs originally filed their Complaint in the Circuit Court for Davidson County, Tennessee, on July 2, 2014. Reserving its right to challenge both the sufficiency of service of process and the propriety of venue, KMC removed the case to this court under 28 U.S.C. § 1441, based on diversity jurisdiction. (Docket No. 1). On September 10, 2014, KMC filed the instant

2

Motion to Dismiss or Transfer, in which it initially (1) challenged the sufficiency of service and (2) urged the court to dismiss the case based on improper venue or to transfer it to the Winchester Division of the Eastern District.

At the November 17, 2014 initial case management conference, the parties informed the court that they have resolved issues related to service, thereby mooting KMC's motion as it relates to service of process. Accordingly, the court will address only KMC's venue-related challenges.

## ANALYSIS

### I. Applicable Legal Standard for Post-Removal Venue Challenge

Under 28 U.S.C. § 1441(a), a defendant may remove a case over which a federal court would have had original jurisdiction, provided that the defendant removes the case to the federal district court "embracing the place where such action is pending."[1] Because the general venue statute (§ 1391) does not apply to removed actions, federal courts have struggled with whether a defendant who removes to the appropriate district court under § 1441 may thereafter challenge the propriety of venue following removal. The propriety of venue can impact both the statutory authority for transferring a case and whether the choice-of-law rules of the transferor court will apply in the transferee court under the rule of *Van Dusen v. Barrack*, 376 U.S. 612 (1964). In general, after a convenience transfer under § 1404(a) from one "proper" venue to another, the transferee court applies the law of the transferor court (*i.e.*, the plaintiff gets the benefit of forum

---

[1] KMC originally argued that venue was not proper under 28 U.S.C. § 1391. However, by its own terms, § 1391 applies only to cases filed directly in federal court ("all civil actions brought in the district courts of the United States"), not to removed actions. *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-666 ("This action was not 'brought' in the District Court, nor was respondent 'sued' there; the action was brought in a state court and removed to the district court.")

3

shopping), *Van Dusen*, 376 U.S. at 639, whereas after a transfer from an improper venue to a proper venue under § 1406(a), the transferee court applies its own law as if the case had been originally filed there (*i.e.*, the plaintiff does not get the benefit of forum shopping). *GBJ Corp. v. E. Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998) ("When a case is transferred [under § 1406(a)], the choice-of-law rules of the transfer*ee* court apply.") (emphasis in original).[2]

The prevailing view, adopted by most circuits to have addressed the issue (and endorsed in at least one leading treatise), is that a defendant who removes an action may challenge venue based on the venue provisions that would have been applicable in the state court, provided that the venue challenge has been properly preserved. *See, e.g.*, *Lambert v. Kysar*, 983 F.2d 1110,

---

[2] It is important to note that, with respect to § 1404(a) convenience transfers, the rule that a transferee court must apply the law of the transferor court is not absolute and depends on the policy interests involved. In a recent decision, the Supreme Court considered a case in which the plaintiff filed directly in a federal venue that was "proper" under § 1391 but that conflicted with a contractual venue provision that fixed venue exclusively in federal court in another state. *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W.D. Tex.*, 134 S. Ct. 568 (2014). The Court found that venue was indeed "proper" under § 1391 because the statutory requirements were met (regardless of the contractual terms), that the federal court was therefore obligated to consider the transfer request as a motion for a "convenience transfer" or a transfer "in the interest of justice" from one proper venue to another under § 1404(a), and that the contractual venue provision was a nearly insurmountable factor favoring transfer. *Id.* at 578-581; *see also id.* at 581 ("In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain"). Significantly, the Court stated that, although the transfer had to be made under § 1404(a), the transferee court should *not* apply the law of the transferor court after transfer, because there was no policy basis to reward the plaintiff for violating the contractual venue provision. *Id.* at 582-83 ("[W]hen a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue choice-of-law rules . . . . [A] plaintiff who files suit in violation of a forum-selection clause enjoys no [] 'privilege' with respect to its choice of forum, and therefore it is entitled to no concomitant 'state-law advantages.' Not only would it be inequitable to allow the plaintiff to fasten its choice of substantive law to the venue transfer, but it would also encourage gamesmanship.") (quoting *Van Dusen*, 376 U.S. at 635).

1113 n.2 (1st Cir. 1993) (finding that "the filing of a removal petition in a diversity action, without more, does not waive the right to object to the state court venue"); *PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 72 (2d Cir. 1998) ("A party who removes an action from state to federal court does not, in so doing, waive the defense of improper venue as to the underlying state court action.") (internal quotation omitted); *Transure, Inc. v. Marsh & McLennan, Inc.*, 766 F.2d 1297, 1300 (9th Cir. 1985) (examining state court venue rules in removed action); James Wm. Moore, *Moore's Fed. Practice* (3d ed. 2014), § 11.36[5][a].); *but see Hollis v. Fl. State Univ.*, 259 F.2d 1295, 1298-1300 (11th Cir. 2001) (holding that defendant may not challenge venue following removal).[3]

Here, the court finds no reason to depart from that prevailing view, which sensibly preserves a defendant's ability to argue that the plaintiff filed its lawsuit in an improper geographic location. The text of § 1441(a) does not contain any language specifically stating that venue in the removal court is "proper" for purposes of the transfer statutes. If a plaintiff filed the case in an inappropriate geographic location in the first place, why should the court read § 1441(a) as essentially (a) rewarding the plaintiff for filing in an inappropriate geographic location and (b) penalizing a defendant for removing the case to the appropriate district under § 1441(a)? The better reading of § 1441(a), which most circuits have adopted, is that it simply fixes the location to which a particular case may be removed, without having a preclusive effect on the issue of the propriety of venue for purposes of post-removal transfer. To hold otherwise

---

[3] In its Reply, KMC contends that *Hollis* was wrongly decided. The court agrees with KMC's argument that the *Hollis* court erroneously conflated venue with jurisdiction in concluding that, because § 1446(f) may have statutorily superseded the doctrine of derivative *jurisdiction*, venue challenges following removal are no longer viable. Venue and jurisdiction are not the same thing.

would essentially permit a plaintiff to nullify § 1391 by filing federal question or diversity cases directly in the wrong state court in order to get the benefit of that state's choice-of-law rules following removal under § 1441(a) and transfer under § 1404(a). There seems to be no policy rationale for adopting this expansive construction of § 1441(a) as it relates to the transfer statutes, which the text of § 1441(a) in no way requires.[4]

The court therefore will analyze whether venue was proper in Davidson County under Tennessee's venue provisions. As a general matter, in response to a venue challenge, a plaintiff has the burden to show that venue is proper in the court in which it filed the case. *See McDonald v. Calhoun*, 2007 WL 4460069, at *3 (Tenn. Ct. App. Dec. 19, 2007); *see also* 14D Charles Alan Wright, et al., *Federal Practice & Procedure*, § 3826 (3d ed. 2012) (stating that the "weight of judicial authority" is that, "when an objection has been raised, the burden is on the plaintiff to establish that the district he or she has chosen is a proper venue").

## II.    Propriety of Venue in Davidson County Circuit Court

Venue in Tennessee state court is governed by Tenn. Code Ann. § 20-4-104.[5] Under that statute, a defendant corporation is subject to suit in the following venues:

---

[4] In *Hollis*, the Eleventh Circuit concluded that, upon removal under § 1441(a), venue is *per se* "proper" in the district court for purposes of the transfer statutes, meaning that any transfer to another federal district court would have to take place as a "convenience transfer" under § 1404(a). Even if that interpretation were correct, it does not necessarily mean that the transferor court's choice-of-law rules would apply in the transferee court following a § 1404(a) transfer. As the Supreme Court recognized in *Atlantic Marine*, the *Van Dusen* rule should not be mechanically applied to § 1404(a) transfers if the animating policy interests in *Van Dusen* are not applicable.

[5] Unlike the plaintiff in *Transure*, 766 F.2d at 1300, the plaintiffs here do not argue that Kia procedurally waived the issue of venue by failing to comply with any state law procedural requirements for raising a venue challenge. The court will therefore consider the venue challenge on its merits.

6

>   (1) The county where all or a substantial part of the events or omissions giving rise to the cause of action accrued;
>
>   (2) The county where any defendant organized under the laws of this state maintains its principal office; or
>
>   (3) (A) If the defendant is not organized under the laws of this state, the county where the defendant's registered agent for service of process is located;
>
>   (B) If the defendant does not maintain a registered agent within this state, the county where the person designated by statute as the defendant's agent for service of process is located.

Although not explicitly stated by the parties here, both sides appear to agree that venue is proper in Coffee County, Tennessee (a geographic area embraced by the Eastern District) under § 20-4-104(1), where "all or a substantial part of the events . . . giving rise" to the plaintiff's causes of action accrued. Thus, there is at least one proper venue within Tennessee.

The operative issue is whether, under § 20-4-104, venue is also appropriate in Davidson County, Tennessee, where the plaintiffs initially filed this case. Because KMC is not organized under the laws of Tennessee and does not maintain a registered agent for service of process here, §§ 20-4-104(2) and 20-4-104(3)(A) are plainly inapplicable. The remaining question is whether, under § 20-4-103(3)(B), KMC has an "agent for service of process" in a particular Tennessee county as prescribed by Tennessee statute.

Both parties agree that the court must look to Tenn. Code Ann. § 48-15-104 to make this determination. In relevant part, that law articulates four circumstances under which the Tennessee Secretary of State is statutorily defined as a corporation's "agent for service of process:" (1) a domestic or foreign corporation is authorized to do business in Tennessee but fails to appoint or to maintain a registered agent in Tennessee; (2) the corporation has a registered agent but that agent cannot be found with reasonable diligence; (3) a foreign

7

corporation "transact[s] conduct or conduct[s] affairs in this state without first procuring a certificate of authority to do so from the secretary of state"; and (4) a foreign corporation previously possessed a certificate of authority but that authority was withdrawn or revoked. Tenn. Code Ann. § 48-15-104(b). The Tennessee Secretary of State is located in Davidson County; thus, if one of these four circumstances applies to KMC, then KMC's statutory default agent for service of process is the Tennessee Secretary of State and venue is proper here under § 20-4-104(3)(B).

Here, the plaintiffs simply quote § 48-15-104(b) and state, without explanation, that the Tennessee Secretary of State is therefore KMC's agent for service of process under Tennessee law. The plaintiffs have missed a necessary step: they fail to identify any provision of the law that purportedly applies to KMC or its operations. As KMC argues, none of the four categories set forth in § 48-15-104(b) applies to it: KMC is not authorized to do business in Tennessee, it has no registered agent in Tennessee (let alone an agent who cannot be located with reasonable diligence), it does not conduct business or affairs in Tennessee directly, and it did not have a certificate of authority that could have been revoked in the first place. Indeed, as KMC points out, in acknowledging that KMC must be served in compliance with the Hague Convention, the plaintiffs effectively concede that the Tennessee Secretary of State is not KMC's registered agent for service of process under Tennessee law.[6] Moreover, it is insufficient for the plaintiffs merely to quote § 48-15-104(b) without applying it to KMC. In the absence of any meaningful showing that venue is proper in Davidson County under § 48-15-104(b)'s default provisions (incorporated

---

[6] Although an argument perhaps could be made that KMC "transacts business or affairs" in Tennessee through its wholly owned distributors, the plaintiffs have not made that argument in their Response.

8

by reference into § 20-4-104(3)(B)), the court finds that venue is not proper in Davidson County.

Having determined that venue is not proper, the court must determine whether to dismiss the case without prejudice or to transfer it in the interest of justice under § 1406(a). In *Goldlawr, Inc.*, *v. Heiman*, 369 U.S. 463, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962), the Supreme Court found that district courts have ample discretion to transfer (rather than dismiss) cases under § 1406(a), "however wrong the plaintiff may have been in filing his case as to venue[.]" Here, the court has already issued a Case Management Order generally reflecting deadlines agreed to by the parties. KMC has not provided any rationale as to why dismissal, rather than transfer, is warranted here. Therefore, in the interest of justice, the court will exercise its discretion to transfer the case to the Winchester Division of the Eastern District under § 1406(a).[7]

---

[7] Even if venue were proper in this district court or in Davidson County, the court would find that the relevant factors under § 1404(a) favor transfer to the Winchester Division of the Eastern District. *See Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006) (articulating factors); *Reese v. CNH Am. LLC*, 574 F.2d 315, 320 (6th Cir. 2009) (stating that district court has "broad discretion to determine when party convenience or the interest of justice make a transfer appropriate"). KMC has identified numerous third-party witnesses located in or near the Winchester Division, including the responding officer (Trooper Solomon), several members of the Manchester Fire Department (at least some of whom responded to the scene of the accident), a witness from Manchester who called 911 following the crash, and a representative from the "A+ Wrecker Service" (the company that towed the car following the crash). With respect to Trooper Solomon, who may be the most important third-party witness in the case, KMC points out that it is questionable whether Trooper Solomon could be compelled to attend trial in this court under Fed. R. Civ. P. 45(1)(B), whereas his compulsory attendance in the Winchester Division is virtually assured. Although the plaintiffs point out that the Knost siblings go to school in Murfreesboro under a joint custody arrangement between Trisha Grant and her children's father, that factor does not carry much weight here. It appears that the children must also travel to Coffee County (where their mother resides) on a regular basis, the convenience of party witnesses generally carries less weight than the convenience of non-party witnesses, Ms. Grant can represent her children's interests (at least in some respects) in the Winchester Division in her capacity as their "next friend," and Ms. Grant is also suing in her individual capacity in the first place. With respect to treating physicians at the Vanderbilt Medical Center, who cared for the Knost children following the underlying incident, they likely could be compelled to testify in the Winchester Division (as well as this district) under Fed. R. Civ. P. 45. Moreover, a case could be made that the fact witnesses in Coffee County will be more crucial than the medical

## CONCLUSION

For the reasons stated herein, the defendant's motion will be granted and this case will be transferred to the Winchester Division of the United States District Court for the Eastern District of Tennessee.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

providers in the presentation of the case to a jury. Furthermore, the underlying accident occurred in Coffee County and it appears that Coffee County residents have a stronger policy interest in the resolution of this lawsuit than the residents of Davidson County. The remaining factors are neutral. Therefore, even if venue were proper here (which the court has found it is not), transfer would be warranted under § 1404(a).